UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISA EDNA JOHNSON,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:17-cv-02359 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born August 27, 1964, applied on July 12, 2013 for SSI and disability insurance benefits, alleging disability beginning November 8, 2012. Administrative Transcript ("AT") 28, 171. Plaintiff alleged she was unable to work due to fibromyalgia and anxiety. AT 65. In a

decision dated March 2, 2016, the ALJ determined that plaintiff was not disabled.[1] AT 28-40.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since November 8, 2012, the alleged onset date.
>
> 3. The claimant has the following severe impairments: fibromyalgia and Hashimoto's thyroiditis.
>
> 4 The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

finds that the claimant has the residual functional capacity to perform light work, except she is unable to climb ladders, ropes, and scaffolds and can occasionally climb ramps and stairs. The claimant can frequently balance, and occasionally stoop, kneel, crouch, and crawl.

6. The claimant is capable of performing past relevant work as an administrative clerk, sales representative financial services, and web designer, a combination job based on components of graphic designer and data analyst. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2012 through the date of this decision.

AT 28-39.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to comply with SSR 12-2p and controlling law in evaluating the severity of plaintiff's fibromyalgia; (2) the Appeals Council committed reversible error in not finding that new evidence provided a basis for changing the ALJ's decision; (3) the ALJ's credibility finding is not based on substantial evidence; and (4) the ALJ's hypothetical question to the VE failed to include all plaintiff's limitations.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. <u>Id.</u>; <u>see also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. <u>See</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

## ANALYSIS

### A. <u>Fibromyalgia</u>

Plaintiff asserts that, despite finding fibromyalgia a severe impairment, the ALJ failed to comply with SSR 12-2p, and erroneously focused on the lack of objective evidence.

SSR 12-2p provides guidance on evaluating a disability claim involving fibromyalgia. Under SSR 12-2-p, an ALJ evaluates a claimant's statements about her symptoms and functional limitations by following the two-step process set forth in 20 CFR § 404.1529. First the ALJ must consider whether the claimant's statements about her symptoms are consistent with the "medical signs and [laboratory] findings" of record. If the objective medical evidence does not on its own compel a finding of disability, the ALJ must consider the evidence and the factors set forth in 20 C.F.R § 404.1529, including the claimant's daily activities. <u>Id.</u>

The Ninth Circuit addressed treatment of symptom testimony in fibromyalgia cases in <u>Revels v. Berryhill</u>, 874 F.3d 648 (9th Cir. 2017). The Ninth Circuit observed that fibromyalgia is unusual in that patients have normal strength, sensation, and reflexes; their joints appear normal; and "'[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain.'" <u>Revels</u>, 874 F.3d at 656 (quoting <u>Rollins v. Massanari</u>, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting)). In <u>Revels</u>, the ALJ determined that the claimant's "testimony was undercut by the lack of 'objective findings' supporting her claims of severe pain." <u>Id.</u> at 666. The ALJ "highlighted several examinations that had mostly normal results, such as an

4

X–ray and MRIs of [the claimant's] neck and back, as well as the nerve conduction and velocity study of her hands," and "cited medical records showing that, at several doctor's appointments, [the claimant] exhibited normal muscle strength, tone, and stability, as well as a normal range of motion." Id. The Ninth Circuit held that the ALJ erred in discounting the claimant's testimony (as well as testimony provided by medical providers) because the ALJ failed to "consider [the claimant's] testimony in light of her fibromyalgia diagnosis." Id. The Ninth Circuit stated that the ALJ must "consider a longitudinal record whenever possible" when determining the RFC of a patient with fibromyalgia. Id. at 657. The Ninth Circuit added that, "[i]n evaluating whether a claimant's [RFC] renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods" and "[t]he failure to do so is error." Id. at 662.

Here, ALJ found plaintiff's fibromyalgia to be a severe, medically determinable impairment that limited her ability to perform basic work activities. AT 27. The ALJ then considered whether plaintiff's alleged symptoms and limitations were consistent with the medical evidence and other evidence in the longitudinal record, pursuant to § 404.1529. See Revels, 874 F.3d at 657.

As to objective evidence, the ALJ found that "the treatment record does not support the severity, intensity, or frequency of symptoms as alleged." AT 36. The ALJ continued: "The claimant was diagnosed with fibromyalgia as early as 2009[.] The diagnosis of fibromyalgia does not appear to be based on objective findings by examination, but primarily on reported symptoms of fatigue and joint pain that, according to the claimant, she had for most of her life. The examination findings were that the claimant had full range of motion in all extremities with no joint tenderness or swelling." AT 36; see AT 424 (2009 exam note that plaintiff "feels she has been having symptoms of fatigue and chronic pain most of her life").

The ALJ noted that there were no medical opinions or source statements from any of plaintiff's treating doctors. AT 37. However, the agency sent plaintiff to two separate physical consultative examinations to assess the severity and functional effects of her fibromyalgia. See SSR 12-2p (agency may enlist a CE "to help us assess the severity and functional effects of

5

medically determined FM or any other impairment(s)."). The ALJ gave "reduced weight" to the October 2013 consultative examination by Dr. Jonathan Schwartz, who diagnosed plaintiff with body pain likely secondary to fibromyalgia but stated that, based on his examination and findings, plaintiff had no functional limitations. AT 37, citing AT 300-303. The ALJ found that Dr. Schwartz "did not adequately consider the claimant's subjective complaints, and the medical record . . . supports a finding that the claimant has at least some exertional and non-exertional physical limitations due to fibromyalgia." AT 38.

Dr. Satish Sharma conducted the second consultative exam in December 2015. His report discussed plaintiff's history of fibromyalgia and treatment, work history, and subjective statements. AT 513-522. Plaintiff reported to Dr. Sharma that "her symptoms started after the first pregnancy in 1991" and progressively worsened to include joint pain, headaches, and fatigue. AT 519. Plaintiff reported that she quit working in 2010 because, due to chronic pain and fibromyalgia, she could not concentrate or focus. AT 520. She reported that "prolonged sitting and standing was making her pain worse," and that anxiety, depression, and fibromyalgia made it difficult to concentrate. AT 520.

The ALJ gave significant weight to Dr. Sharma's opinion, but found "after consideration of the entire medical record, and finding the claimant to be only somewhat credible, that she should be limited to light exertional functional capacity" with limitations based on reported pain and medication side effects. AT 38. The ALJ noted that plaintiff "once again provided inconsistent information, telling the doctor that she stopped work in October 2010, yet she alleges at other times that she worked until November 2012." AT 38; see AT 34 (noting plaintiff's employer's statement that plaintiff worked as an administrative assistant until November 2013, a year after the alleged disability onset date in November 2012), AT 274; AT 35 (noting plaintiff's statement that she worked 20 hours a week from December 2010 to November 2012), AT 189-190. The ALJ also gave great weight to State agency medical consultants Dr. P.N. Ligot and Dr. Barbara Moura, both of whom reviewed the medical evidence and opined that plaintiff's fibromyalgia was not a severe impairment. AT 39, 71-73.

////

The ALJ also considered plaintiff's testimony, third party statements, and daily activities. As to daily activities, the ALJ recounted plaintiff's testimony that "she is very limited in activities of daily living, depending primarily on her spouse and two children to do most household chores. She rarely drives or goes shopping. She testified that at times she uses a cane or wheelchair when going out." AT 33; see AT 56-58. The ALJ continued: "However, she has traveled to Florida and [Georgia] to meet with one of her daughters to help plan her wedding and has taken care of most of the arrangements." AT 33; see AT 58-59. The ALJ also noted that plaintiff traveled to Florida to take care of her parents during the alleged disability period. AT 35; see AT 58-59, 376. "Traveling and taking care of another individual is inconsistent with the Disability Reports, Function Reports, and Third-Party Statements alleging that the claimant stayed in bed most days and was unable to do very little during the day. . . . Also, there is no indication in the record that the claimant uses a cane or other assistive device for ambulation," the ALJ wrote. AT 35.

In sum, the ALJ considered not only the objective medical evidence but plaintiff's longitudinal record, the opinions of consultative examiners, plaintiff's subjective statements (credited to some degree), and plaintiff's daily activities. The court finds no error in the ALJ's consideration of the fibromyalgia evidence under <u>Revels</u> or SSR 12-2p.

B. <u>New Evidence</u>

Plaintiff next claims that the Appeals Council erred in failing to consider additional medical evidence her counsel submitted post-decision[2], as the Appeals Council found no "reasonable probability that it would change the outcome of the decision." AT 2. These records, included in the Supplemental Administrative Transcript, consist of a medical source statement from Dr. Puneet Grewal dated August 11, 2014, and office notes from Dr. Anthony Padula of the Northern California Arthritis Center, dated May 13, 2009. (Supplemental Administrative Transcript ("SAT") 524-529.)

Plaintiff contends that Dr. Grewal's opinion provides a basis for changing the ALJ's

---

[2] Plaintiff's current counsel does not know why this medical opinion was not submitted to the ALJ. (ECF No. 14-1 at 22.)

findings, as it supplies evidence the ALJ stated was missing from the record.[3] See AT 37 (noting "there are not medical opinions or medical source statements from any of the claimant's treating doctors."). Dr. Grewal's 2014 source statement, which states that he saw plaintiff every three months for fibromyalgia, falls squarely within the alleged disability period from November 2012 to March 2016. SAT 524. Medical records show that Dr. Grewal treated plaintiff for multiple years, noting, e.g., "multiple trigger point tenderness," moderate pain, and difficulty functioning in February 2012. AT 327-328.

In his 2014 medical source statement, Dr. Grewal listed plaintiff's symptoms as "joint pain (severe), fatigue (unable to sit or stand longer than 20 min.), depression from chronic pain and loss of active lifestyle." SAT 524. He noted that the "pain is constant and ranges from 7/10 to 9-10/10 during flareups[.]" SAT 524. Dr. Grewal opined that plaintiff's impairments lasted or could be expected to last twelve months and that plaintiff required a cane or assistive device when engaged in occasional standing or walking. SAT 524; compare AT 35 (discounting plaintiff's credibility in part because "there is no indication in the record that [she] use a cane or other assistive device for ambulation.").

Dr. Grewal indicated that plaintiff was limited to two hours standing/walking; two hours sitting; rarely lifting less than 10 pounds; rarely crouching, squatting, climbing ladders; occasionally twisting, stooping, climbing stairs; and using her hands, fingers, and arms no more than five percent of the time. SAT 525. He opined that plaintiff was "incapable of even 'low stress' jobs" and was "unable to maintain an [eight-]hour workday due to chronic pain and fatigue from fibromyalgia." SAT 525-526.

The Appeals Council found that the new evidence did not show a "reasonable probability" of changing the outcome of the decision. AT 2; see 20 C.F.R. § 404.970(a) (Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional

---

[3] The 2009 records from rheumatologist Dr. Padula indicate that plaintiff was referred to him by Dr. Grewal. As Dr. Padula's opinion falls outside the alleged disability period, it has little relevance.

evidence would change the outcome of the decision.").

District courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner . . . and the district court reviews that decision for substantial evidence, based on the record as a whole." Id. at 1161–62 (citation and quotation marks omitted). Following Ramirez v. Shalala, 8 F.3d 1449 (9th Cir. 1993), the Ninth Circuit has "routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." Id. at 1163 (collecting cases).

Here, plaintiff's long-term treating physician opined about the severity of her impairments, her work-related functional limitations, and her need for a cane or assistive device, but this opinion was never considered by the ALJ, rejected for specific and legitimate reasons, or factored into the RFC. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, supported by substantial evidence). Indeed, the ALJ erroneously believed that no such opinion existed. AT 37. Moreover, Dr. Grewal's opinion bears on ALJ's finding that both plaintiff and her husband were less than fully credible as to the intensity, frequency and severity of plaintiff's symptoms. See AT 35. As the undersigned concludes that the decision is not supported by substantial evidence, plaintiff is entitled to summary judgment.

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether plaintiff was disabled during the relevant period. On remand, the ALJ shall consider the 2014 medical source statement by plaintiff's treating physician as part of the medical record. The ALJ is also free to develop the record in other ways, as needed.

The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record.

////

////

////

////

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is denied; and
3. This matter is remanded for further proceedings consistent with this order.

Dated: February 14, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/johnson2359.ssi.ckd